**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT CLARKSBURG**

ELECTRONICALLY FILED
Oct 06 2017
U.S. DISTRICT COURT
Northern District of WV

ROSA L. O'NEAL,

Plaintiff,

vs. Civil Action No. 1:17-CV-170 (Keeley)

BRYCE A. SCARBRO, individually, BRAXTON COUNTY COMMISSION, a political subdivision in the State of West Virginia,

Defendants.

**COMPLAINT**

This complaint, brought pursuant to 42 U.S.C. Section 1983, the Fourth Amendment to the United States Constitution, arises out of the Defendants' unreasonable seizure of the Plaintiff on or about October 7, 2015 in Braxton County, West Virginia, within the Northern District of West Virginia.

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

**PARTIES**

1. The Plaintiff was at all times relevant hereto a resident of Braxton County, West Virginia, within the Northern District of West Virginia.

2. Defendant Scarbro was at all times relevant hereto a Sheriff's Deputy for the Braxton County Sheriff's Department, which is under the Braxton County Commission, and was

at all times relevant hereto acting under the color of law and within the scope of his employment. Said Defendant is named herein in his individual capacity.

3. Defendant Braxton County Commission ("BCC") is a political subdivision of the State of West Virginia, and as such, is liable for the negligent conduct of its agents and employees, including the Sheriff, the Sheriff's Department, and the employees of the Sheriff's Department, so long as that conduct was carried out within the scope of their employment. See West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, et seq.

4. The conduct alleged herein to have been committed by employees and/or agents of Defendant BCC are hereby alleged to have been committed by said agents and/or employees acting in the scope of their employment and authority. The causes of action asserted herein against Defendant BCC refer to acts performed by agents and employees of said Defendant political subdivision, rather than the formulation and implementation of policy related to how law enforcement and police protection are provided.

**FACTS**

5. On or about October 6, 2015, the plaintiff, Rosa L. O'Neal, arrived at the Braxton County courthouse. Her son, Edwin O'Neal's girlfriend, Amber Markle appeared for a hearing in a criminal action in the Circuit Court of Braxton County, West Virginia. Her son and the woman were co-defendants in the criminal action and the plaintiff had been attempting to arrange for them both to live at her property while on bond, because both were otherwise homeless.

6. Amber Markle was drug tested by the Court, which resulted in a positive finding. Ms. Markle had her bond revoked and was being remanded to the custody of the Central Regional Jail. She suffers from seizures, and the plaintiff was in possession of the woman's seizure medications. Unbeknownst to the plaintiff, the court ordered that plaintiff's son report for immediate drug testing.

7. As plaintiff was waiting outside the courtroom in Braxton County, she was approached by a sworn employee of the Braxton County Sheriff's Department, who upon information and belief was court bailiff Lou Dellamae, who asked plaintiff if she was in possession of Ms. Markle's seizure medications.

8. Plaintiff observed that the officer was wearing a sheriff's department uniform, with a badge, and believed the man to be the sheriff of Braxton County.

9. Plaintiff told the officer that she would deliver the co-defendant's medications to Central Regional Jail. The officer said nothing to the plaintiff regarding her son, or his whereabouts.

10. Thereafter the plaintiff left the courthouse in order to take the seizure medication to the regional jail.

11. After leaving the regional jail, the plaintiff stopped at her residence so that she could use the bathroom prior to driving to the jail.

12. The then 66-year-old plaintiff was using the bathroom in her home when she heard her dogs barking loudly.

13. She got up, washed her hands, and finds Defendant Scarbro, a Braxton County deputy, at her front door.

14. Defendant Scarbro tells the plaintiff that he observed plaintiff's son run through her home.

15. Plaintiff responds to Defendant Scarbro that she wasn't aware of her son being at the residence, and that, to her knowledge, he was working in Flatwoods, West Virginia. At that time he was released on bond.

16. Plaintiff allowed Defendant Scarbro into her home and allowed him to search her home for her son.

17. Defendant Scarbro did not find the plaintiffs' son in the home. Nor did he find any evidence that her son had recently been inside the residence.

18. At the time and date Defendant Scarbro claims to have seen the plaintiff's son in her home, he was working in Flatwoods, West Virginia. Defendant Scarbro did not observe the plaintiff's son at plaintiff's residence on October 6, 2015.

19. Defendant Scarbro proceeded to question the plaintiff while inside her home. He asked her if Ms. Markle's lawyer, David Karickhoff, had contacted her regarding a pickup order being issued for her son. She replied "no," but that she had seen Mr. Karickhoff earlier while at the courthouse. However, Mr. Karickhoff did not mention to her that a pickup order was issued for her son. Plaintiff spoke to Mr. Karickhoff prior to the Court ordering her son to appear. She did not see, or speak with, Mr. Karickhoff after the Court ordered her son to appear for drug testing.

20. The plaintiff volunteered to Deputy Scarbro that she had spoken with the sheriff earlier while at the courthouse, and that he never mentioned to her that there was a pickup order for her son.

21. Defendant Scarbro replied, "Really, what did [the Sheriff] say?"

22. The plaintiff responded that she was asked to provide the seizure medications.

23. Defendant Scarbro asked, "Again, you spoke to Sheriff Williams?"

24. The plaintiff answered, "Yes, or somebody." Defendant Scarbro then told the plaintiff that the bond she posted for her son's bond would be forfeited if he didn't show up by a certain date, and then he left her residence. The plaintiff then contacted her son's bail bondsman, who confirmed that her son was working in Flatwoods, and who subsequently turned him over for drug testing, without issue.

25. Two days following her conversation with Defendant Scarbro, the 65 year-old plaintiff was arrested for the misdemeanor criminal charge of obstructing an officer under W. Va. Code Section 61-5-17(a), for allegedly lying to Deputy Scarbro.

26. The plaintiff was taken to jail, where she was incarcerated for 15 hours. The 65 year-old plaintiff was then released from Central Regional Jail, with no transportation. She was forced to walk down the public roadway, eventually being picked up by a good samaritan who stopped and asked her if she needed a ride.

27. The following Monday after being released from jail, the plaintiff went to meet with the Sheriff of Braxton County. It was at that time that she realized that the man she had spoken to was not "the" sheriff, but rather a sheriff's deputy named Lou Dellamae, who was the Court's bailiff. The sheriff dismissively told the plaintiff, "No, I don't know you."

28. Defendant Scarbro obtained an arrest warrant for the plaintiff by submitting an affidavit Criminal Complaint against the plaintiff to the Magistrate Court of Braxton County. In the sworn affidavit, Scarbro alleged that he observed a male subject matching the description of

the plaintiff's son enter her residence on October 6, 2017, just before he knocked on the door. Scarbro further alleged that attorney David Karickoff, who represented both Amber Markle and plaintiff's son, had advised the plaintiff that the judge had ordered her son to report for an immediate drug test. He alleged that the plaintiff denied having been told the same by Mr. Karikoff. He alleged that he spoke to Mr. Karikoff, who told him that he had "told the accused in detail what the judge had ordered." Defendant Scarbro further alleged that the plaintiff claimed to have spoken to the sheriff, but that he asked the sheriff whether he spoke to the plaintiff, but that the sheriff stated that he "did not even know [the plaintiff.]"

29. Defendant Scarbro was accusing the plaintiff of having lied to him during his conversation with her after entering plaintiff's home on October 6, 2017, and alleged that such allegations were criminal violations of W. Va. Code Section 61-05-17(a), "obstruction of an officer." The lies allegedly told by the plaintiff were (1) that she was unaware of the Circuit Court of Braxton County having issued an order compelling her son to appear and take an immediate drug test; and (2) that she had spoke to the Sheriff of Braxton County earlier at the courthouse and that he had said nothing about a pickup order for plaintiff's son.

30. On or about January 20, 2016, the criminal charge against the plaintiff was dismissed on the motion of the State. The motion to dismiss filed by the State noted that "The State will not present evidence in this matter." The magistrate granted the motion. As such, the criminal prosecution was terminated favorably towards the plaintiff.

31. The State filed the motion to dismiss because the evidence showed that the plaintiff did not lie to Defendant Scarbro, as alleged in Defendant Scarbro's affidavit. Nor did

Defendant Scarbro observe a man matching the plaintiff's son's description enter the plaintiff's home, as alleged in the affidavit.

**COUNT ONE - UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT**

32. Plaintiff hereby incorporates the previous paragraphs as though fully restated herein.

33. The Defendant Scarbro caused a seizure of the plaintiff pursuant to legal process when he submitted a criminal complaint with sworn affidavit, signed by him, to the Magistrate Court of Braxton County.

34. The said legal process was unsupported by probable cause due to the fact that Defendant Scarbro included false allegations. He falsely swore that he observed the plaintiff's son, or someone matching his description, enter the plaintiff's home just prior to his entry into the home on October 6, 2015. In fact, evidence subsequently showed that the plaintiff's son was working in Flatwoods, West Virginia at the time, and no male subject was found on the premises during Defendant Scarbro's search. Defendant Scarbro also falsely swore that the plaintiff lied to him, when in fact the plaintiff did not lie to Defendant Scarbro. Plaintiff was unaware of the Braxton Circuit Court's order pertaining to her son, and she had spoken to a deputy of the Braxton County Sheriff regarding the seizure medications, while she was at the courthouse. Although plaintiff believed that the individual to be the sheriff, and not a deputy sheriff, her statement was not a lie. She furthermore qualified her statement by stating that she spoke with the sheriff, "or somebody." Such was a reasonable mistake given the fact that elected sheriffs in

West Virginia generally also spend time in Circuit Court courtrooms similar to a bailiff, and she had never previously met the sheriff to know what he looked like.

35. The criminal proceedings instituted by Defendant Scarbro against the plaintiff were terminated favorably towards the plaintiff due to the fact that the charge was dismissed on the motion of the State.

36. No objectively reasonable police officer would have believed that probable cause existed to charge the plaintiff with a crime and have her spend 15 hours incarcerated in a regional jail.

37. Defendant Scarbro knowingly and intentionally, or with a reckless disregard for the truth, made false statements, as described above in detail, in his affidavit seeking the arrest of the plaintiff and also omitted facts from the affidavit which would have informed the magistrate of facts he knew would have negated probable cause.

38. The said false statement and omissions were material and necessary to the magistrate's finding of probable cause. The entire alleged justification for an obstruction charge under the circumstances was the officer's allegation that the plaintiff "lied" to him.

39. Defendant Scarbro's misstatements and omissions were an attempt to mislead the otherwise neutral and detached magistrate.

40. Defendant Scarbro's actions as alleged herein were under color of law, objectively unreasonable, willful, wanton, intentional and done with a callous and reckless disregard for Rosa O'Neal's Fourth Amendment rights to be free from unreasonable search and seizure.

41. Rosa O'Neal suffered harm for which she is entitled to recover.

## COUNT TWO - STATE LAW NEGLIGENCE CLAIM

42. Plaintiff hereby incorporates the previous paragraphs as though fully restated herein.

43. Defendant BCC specifically owed the plaintiff a duty of reasonable care. It was reasonably foreseeable to the BCC that plaintiff would be harmed as a result of their employee Scarbro's actions.

44. Defendants, by and through their agent and employee, Deputy Scarbro, breached that duty as detailed above and incorporated herein, and furthermore by negligent supervision and training of the defendant police officer. Defendant Scarbro committed an unreasonable seizure of the plaintiff in violation of the Fourth Amendment of the U.S. Constitution by making false statements and material omissions in the arrest warrant submitted to the Magistrate Court of Braxton County, as detailed above, which led to the arrest and 15 hour incarceration of the plaintiff, as well as the plaintiff being dumped on a public roadway by the regional jail. Defendant Scarbro was acting in accordance with his training and supervision.

45. As a direct and proximate result of the BCC's negligence, plaintiff suffered harm for which she is entitled to recover.

## PRAYER

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1. Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for:

a. Past, present and future medical expenses;

b. Past, present and future pain and suffering;

c. Loss of enjoyment of life;

d. Psychological and emotional distress;

e. Any other compensatory damages to be proven at trial;

f. Punitive damages against the individual Defendants in an amount to be determined at trial;

g. Reasonable attorney fees and costs;

h. Any other relief that this Court deems is just and fair;

i. All other damages provided by law;

j. Injunctive relief requiring appropriate training, supervision and discipline in order to remedy all constitutional deprivations which the Plaintiff suffered;

k. Declaratory judgment relief establishing the Defendants' above-described conduct violates the Plaintiff's clearly established constitutional rights.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

ROSA L. O'NEAL
By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff